IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **BERG CORPORATION,** | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-19-00043 |
| **C. NORRIS MANUFACTURING, LLC,** | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

This case arises out of a business transaction between Berg Corp. and C. Norris Manufacturing, LLC. Berg, a Maryland demolition contractor, hired C. Norris, an Ohio manufacturer, to substantially modify a piece of heavy equipment. Now, Berg claims that C. Norris committed negligence in modifying the equipment. Berg initially sued in Baltimore County Circuit Court. C. Norris removed the case to this Court. Before the Court is C. Norris's motion to dismiss for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). No hearing is required. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, C. Norris's motion to dismiss will be denied.

### I.  *Jurisdictional Facts*

Addressing the question of personal jurisdiction, the Court construes the relevant allegations in the light most favorable to Plaintiff and draws "the most favorable inferences for the existence of jurisdiction." *SEC v. Receiver for Rex Ventures Grp.*, 730 F. App'x 133, 137 (4th Cir. 2018) (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)).

Transactions between Berg and C. Norris began in September 2016. At the time, Berg owned a Komatsu PC 800 LC-8 hydraulic excavator ("the Komatsu"). (Compl. ¶ 4, ECF No. 1-2.) Berg commissioned C. Norris to convert the Komatsu to include a 140-foot ultra-high demolition boom. (*Id.* ¶ 5.) C. Norris represented that the conversion would add 20,000 pounds of additional counterweight. (*Id.* ¶ 7.) C. Norris completed the conversion in April 2017. (*Id.* ¶ 6.) In the end, the modification resulted in nearly five times the amount of anticipated additional counterweight. (*Id.* ¶ 7.) C. Norris delivered the modified Komatsu to Berg in Maryland and reassembled it there. (*Id.* ¶ 6.)

In November 2018, Berg sued C. Norris for negligently converting the Komatsu and causing over a million dollars in damage. (Not. of Removal at 1–2, ECF No. 1.) In support of the negligence claim, Berg alleges that C. Norris irreparably damaged the Komatsu by adding much more counterweight than was originally anticipated and by installing couplings that immediately malfunctioned. (Compl. ¶ 7.) Relevant to personal jurisdiction, Berg alleges that it is incorporated in Maryland and has its principal place of business there; that C. Norris is incorporated in Ohio and has its principal place of business there; and, that C. Norris "conducts a regular business in the state of Maryland and in Baltimore City." (*Id.* at 1–2.)

At the motion to dismiss stage, Berg has not put forward evidence in support of its own allegations.[1] C. Norris attaches two affidavits from its President and CEO, Christopher Norris, stating the following. C. Norris does not maintain any offices, employ any individuals, advertise, or directly solicit business in Maryland. (1/7/19 Affidavit ¶ 3–5, ECF No. 5-2.) Indeed, Berg is

---

[1] As C. Norris points out, Berg filed its opposition motion late. *See Moon v. United States*, 89 F.3d 829, 1996 WL 342005, at *3 (4th Cir. 1996) (table) (stating the district court has "broad leeway" to relax or modify its local rules and procedural orders). The Court exercises its discretion to consider the late filed motion.

"the first and only Maryland business that C. Norris has contracted with for services."[2] (*Id.* ¶ 6.) During the course of their dealing, C. Norris took possession of the Komatsu in Ohio and made all modifications in Ohio, including "the installation of the quick couplers at issue, as well as the alleged addition of any weight." (2/2/19 Affidavit ¶ 3–4, ECF No. 9-2.) Berg travelled to Ohio to observe the Komatsu's testing, and, while there, Berg approved the modifications. (*Id.* ¶ 5.) C. Norris disassembled the Komatsu, delivered it to Berg in Maryland, and reassembled it there. (*Id.* ¶ 6.) While in Maryland, C. Norris performed a limited reassembly, which did not involve any alterations to the quick couplers or the amount of counterweight. (*Id.* ¶ 7.) The quick couplers and amount of counterweight are the alterations at issue in the negligence claim.

## *II. Analysis*

The only question for the Court is whether it has personal jurisdiction.[3] C. Norris argues that it does not and that the Court should dismiss the complaint. Berg argues that it does and that the Court should not dismiss. Alternatively, Berg requests leave to amend its complaint, an evidentiary hearing on personal jurisdiction, or a transfer to the United States District Court for the Northern District of Ohio. The Court acknowledges that this case presents a close call but concludes that Berg has made the requisite showing that personal jurisdiction exists in Maryland.

### *A. Legal Standard*

A Rule 12(b)(2) motion to dismiss tests a court's personal jurisdiction over a defendant. *Lewis v. Willough at Naples*, 311 F. Supp. 3d 731, 734 (D. Md. 2018). Where, as here, the court addresses personal jurisdiction "on the basis only of motion papers, supporting legal memoranda

---

[2] These declarations rebut Berg's conclusory statement that C. Norris "conducts a regular business in the state of Maryland and in Baltimore City." (Compl. ¶ 2.) The Court construes allegations in the light most favorable to Berg, but, at this stage, Berg has the burden of establishing a prima facie showing of personal jurisdiction and chose to attach no evidence to carry that burden.

[3] C. Norris asserts that it contemporaneously filed a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), (Mot. to Dismiss at 1 n.1, ECF No. 5), but such a motion does not appear on the docket.

and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005). The court must construe the relevant allegations in the light most favorable to the plaintiff and draw "the most favorable inferences for the existence of jurisdiction." *Receiver for Rex Ventures Grp.*, 730 F. App'x at 137 (quoting *Combs*, 886 F.2d at 676). In drawing its inferences, the court may look outside the plaintiff's proof, to the defendant's motions, legal memoranda, and declarations. *Armstrong v. Nat'l Shipping Co. of Saudi Arabia*, Civ. No. ELH-13-3702, 2015 WL 751344, at *3 (D. Md. Feb. 20, 2015).

## *B. Personal Jurisdiction*

This Court may exercise personal jurisdiction over a defendant if "(1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993). Berg argues that it has met the requirements of the Maryland long-arm statute and, consequently, need not reach the constitutional inquiry. This argument is problematic.

When construing the reach of the Maryland long-arm statute, "this Court is bound by the interpretations of the Maryland Court of Appeals." *Colin v. Walther & Larkin, LLP*, Civ. No. RDB-03-1434, 2003 WL 23978362, at *3 (D. Md. Aug. 22, 2003). The Maryland Court of Appeals "interpret[s] the long-arm statute to the limits permitted by the Due Process Clause." *Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 493 at n.6 (Md. 2006). This means that it is never enough to simply say that there is compliance with the long-arm statute. Courts must always take the additional step of analyzing whether an application of the long-arm statute satisfies due process.

4

True, Maryland courts consistently hold that the long-arm statute "is coextensive with the limits of personal jurisdiction set by the due process clause of the Federal Constitution." *Beyond Sys., Inc. v. Realtime Gaming Holding Co.*, 878 A.2d 567, 576 (Md. 2005). For this reason, when deciding personal jurisdiction, courts often merge the statutory inquiry with the constitutional one. *See id.* at 580. "Courts that cite this 'merged into one' language typically do not discuss the long-arm statute, and instead proceed directly to the constitutional analysis." *Beyond Sys., Inc. v. Kennedy W. Univ.*, Civ. No. DKC-05-2446, 2006 WL 1554847, at *3 (D. Md. May 31, 2006). But, the "merges" language does not obviate the need to satisfy the requirements of the long-arm statute first. *Mackey*, 892 A.2d at 493 n.6. Due process simply "defines the outer perimeter of Maryland's long-arm statute" and "does not eliminate the need to identify a prong of the statute that appears to confer jurisdiction." *Beyond Sys. v. Kennedy W. Univ.*, 2006 WL 1554847, at *4.

Because both the statutory and constitutional requirements must be met, the Court turns, first, to whether the Maryland long-arm statute confers jurisdiction and, second, to whether the exercise of jurisdiction accords with due process.

### 1. *Maryland Long-Arm Statute*

The Maryland long-arm statute permits the exercise of personal jurisdiction over a person who performs one of the statute's enumerated acts. Md. Code Ann., Cts. & Jud. Proc. § 6-103(b).[4] Where § 6-103(b) is the basis for jurisdiction, the person "may be sued only on a cause of action arising from any act enumerated in this section." § 6-103(a).

---

[4] The Maryland long-arm statute also permits the exercise of personal jurisdiction over a person who is "domiciled in, served with process in, organized under the laws of, or who maintains his principal place of business in the State." Md. Code Ann., Cts. & Jud. Proc. § 6-102(a). Berg has not cited this provision nor asserted that C. Norris has such contacts as to warrant general jurisdiction. *See Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). Accordingly, the Court will confine its analysis to § 6-103(b) and specific jurisdiction.

5

In its opposition to C. Norris's motion to dismiss, Berg identifies three § 6-103(b) provisions that authorize personal jurisdiction. *See Gibbs v. Delaware*, Civ. No. RWT 15-1012, 2015 WL 6150939 *2 (D. Md. Oct. 15, 2015) ("[A] plaintiff is required to identify a specific provision within the Maryland long-arm statute which authorizes personal jurisdiction."); *Carbone v. Deutsche Bank Nat'l Trust Co.*, Civ. No. RDB-15-1963, 2016 WL 4158354, at *6 (D. Md. Aug. 5, 2004) ("While it is preferable that a plaintiff identify the statute authorizing jurisdiction in its complaint, the plaintiff alternatively may reference the applicable statute in its response to a defendant's motion to dismiss."). Berg asserts that C. Norris's actions fall within the statute because C. Norris "[t]ransact[ed] any business or perform[ed] any character of work or service in the State," "[c]ontract[ed] to supply goods, food, services, or manufactured products in the State," and "[c]ause[d] tortious injury in the State by an act or omission in the State." § 6-103(b)(1)–(3).

Berg alleges—and C. Norris has yet to dispute—that Berg commissioned C. Norris to convert the Komatsu, that C. Norris performed reassembly work in Maryland, and that the conversion ultimately damaged the Komatsu. Construing the allegations in Berg's favor, it appears that C. Norris contracted to supply services to Maryland, performed some business in Maryland, and caused tortious injury within Maryland. Therefore, Berg makes the prima facie case that the Maryland long-arm statute authorizes personal jurisdiction.

### 2. *Due Process*

The Due Process Clause of the Fourteenth Amendment protects a defendant from having to litigate a claim in a forum where he would not "reasonably anticipate" having to litigate. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). To satisfy due process, a plaintiff must show that a defendant has sufficient minimum contacts with the forum State such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.*

*v. Wash.*, 326 U.S. 310, 316 (1945). For specific jurisdiction, sufficient minimum contacts exist where a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Where specific jurisdiction exists, the State's jurisdiction is limited to controversies arising from the defendant's activities in the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).

In evaluating whether the assertion of specific jurisdiction comports with due process, a court must consider "(1) the extent to which the defendant purposely availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009). Applying this three-prong test, the Court concludes that Berg has made the prima facie showing that the assertion of personal jurisdiction over C. Norris would not offend due process.

The first prong articulates the minimum contacts requirement that the defendant purposely avail itself of the privilege of conducting business within the forum State. *Id.* In analyzing purposeful availment, a court must avoid merely adding up the contacts and comparing them to prior cases; rather, it must focus on the quality and nature of the contacts. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003). Even "a single contact . . . may be sufficient to create jurisdiction as long as exercising jurisdiction would not offend 'fair play and substantial justice.'" *Planet Aid, Inc. v. Reveal, Ctr. for Investigative Reporting*, Civ. No. GLR-16-2974, 2017 WL 2778825, at *5 (D. Md. June 26, 2017) (quoting *Nichols*, 783 F. Supp. at 238). There appear to be three relevant contacts in this case. First, C. Norris contracted to convert the Komatsu for Berg, a Maryland corporation, knowing the Komatsu would go to Maryland and

agreeing to deliver it there. In furtherance of this contract, the parties communicated regularly enough to schedule a testing, delivery, and reassembly of the Komatsu. Second, C. Norris delivered the Komatsu to Berg and assembled it in Maryland, physically entering the forum State. Third, the resulting injury occurred in Maryland.

Alone, the existence of a contract between Berg and C. Norris does not suffice to show purposeful availment. *See Burger King*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."). A contract is an intermediate step, "serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Id.* at 479. To determine whether a contractual transaction yields contacts, courts focus on "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* Relevant considerations include where the parties negotiated the terms; where they agreed the work would be performed; where the payments were made; and, most importantly, who initiated the business relationship. *Municipal Mortg. & Equity, LLC v. Southfork Apartments Ltd.*, 93 F. Supp. 2d 622, 626–27 (D. Md. 2000).

The Court is in the dark as to most of these considerations. Neither party elucidates who initiated the transaction or where they negotiated the contract. *Cf. Chung v. NANA Dev. Corp.*, 783 F.2d 1124, 1128 (4th Cir. 1986) (finding insufficient contacts for a single transaction between a Virginia plaintiff and Alaska defendant where plaintiff initiated all communications and where contract was finalized, payment was tendered, and goods were shipped in Alaska). Because the parties have not proffered the contract, the Court cannot discern whether the parties envisioned an ongoing relationship. *Cf. Knowledge Based Sol., Inc. v. Van Dijk*, No. 16-13041, 2017 U.S. Dist.

LEXIS 144729, at *13–14 (E.D. Mich. Sept. 7, 2017) (finding sufficient contacts where Netherlands resident contracted with software company, maintained ongoing relationship, made heavy use of company's software, and knew company resided in Michigan). Construing the allegations in Berg's favor, the parties agreed, in their contract, that C. Norris would deliver the Komatsu to Maryland and perform some work there. Based on the existence of the contract and the parties' in-person interactions, it is reasonable to infer that C. Norris communicated regularly with Berg and understood it was engaging in significant business in Maryland.

In addition to the formation and execution of the contract, C. Norris physically entered Maryland to deliver and reassemble the Komatsu. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("[A]lthough physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State ... is certainly a relevant contact."). And, the injury occurred in Maryland. *See Calder v. Jones*, 465 U.S. 783, 788–89 (1984) (finding sufficient minimum contacts where Florida newspaper employees "aimed" an allegedly libelous story at California by writing about a California resident, drawing the story from California sources, and impugning the resident's career which was centered there). Like in *Calder*, in which a necessary element of libel—publication—occurred in the forum State, a necessary element of negligence—injury—occurred in Maryland. Also, like the *Calder* defendants, C. Norris knew that any injury would occur in Maryland.

The Court evaluates these contacts collectively, as is proper. *See English & Smith v. Metzger*, 901 F.2d 36, 39 (4th Cir. 1990). Taken together, the course of dealing surrounding the contract, physical entry, and injury are relevant contacts that suffice to make a prima facie showing that C. Norris purposefully availed itself of the privilege of transacting business in Maryland.

The second prong of the specific jurisdiction test requires that C. Norris's contacts with Maryland form the basis of the suit. *Consulting Eng'rs*, 561 F.3d at 278–79. Berg and C. Norris

contracted to convert the Komatsu, and Berg subsequently sued C. Norris on its performance under the contract. The claim necessarily arises from this contract. Moreover, the resulting injury is both a contact between C. Norris and Maryland and an element of the underlying cause of action. As such, C. Norris's relevant contacts with Maryland form the basis of Berg's claims.

The third prong permits the court to consider additional factors to ensure the exercise of jurisdiction is constitutionally reasonable. These factors include:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

*Consulting Eng'rs*, 561 F.3d at 279; *see Crussiah v. Inova Health Sys.*, Civ. No. TDC-14-4017, 2015 WL 7294368, at *5 (D. Md. Nov. 19, 2015) (finding burden on defendant to litigate in neighboring state was not onerous; plaintiff's interest in convenient relief was countervailing; and Maryland had an interest in adjudicating a contract dispute between a Maryland resident and doctors who practice in-state). On this prong, a defendant has the burden of making a compelling case that jurisdiction is unreasonable. *Burger King*, 471 U.S. at 477. C. Norris fails to show that suit in Maryland would present a burden or that Ohio has an interest in adjudicating the suit. In fact, C. Norris does not ask for a transfer to Ohio, only dismissal.

In light of this analysis, Berg has made a prima facie showing that C. Norris has sufficient minimum contacts with Maryland. It is neither unexpected nor unreasonable that C. Norris—a company that contracted with a Maryland corporation, worked with it over several months, delivered and reassembled the product of that contract in Maryland, and, allegedly, negligently inflicted an injury there—should be sued in a Maryland court. *See Burger King*, 471 U.S. at 473 (concluding that, when parties "reach out beyond one state" to create continuing obligations with

10

citizens of another state, they are "subject to regulation and sanctions in the other State for the consequences of their activities"). At this time, the Court's exercise of personal jurisdiction over C. Norris neither violates the long-arm statute nor due process.

### *III.    Conclusion*

For the foregoing reasons, an Order shall enter denying C. Norris's motion to dismiss.

DATED this ___ day of April, 2019.

BY THE COURT:

James K. Bredar
Chief Judge